**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Barbara McLEOD, Defendant-Appellant.**

**No. 73-1265.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1974.

Decided March 21, 1974.

Palmer K. Ward, Indianapolis, Ind., for defendant-appellant.

Stanley B. Miller, U. S. Atty., William F. Thompson, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

CASTLE, Senior Circuit Judge.

Defendant Barbara McLeod and two codefendants were convicted by a jury for crimes arising from the operation of a football parlay card business in Indianapolis, including conspiracy to use interstate telephone communications to promote and to carry on an unlawful gambling business from June 22, 1971 until November 10, 1971, use of interstate telephone communications to promote and to carry on an unlawful gambling business on October 26, 1971 and November 10, 1971, in violation of 18

U.S.C. § 1952, and knowing use of a telephone for the interstate transmission of information assisting in the placing of bets and wagers on sporting events on October 26, 1971 and November 10, 1971, a violation of 18 U.S.C. § 1084. On appeal, McLeod asserts that the court erred in failing to dismiss the indictment and in failing to sustain the motion to suppress certain evidence. McLeod also contends that the evidence was insufficient to support her convictions resulting from an alleged telephone call made on November 10, 1971 or to support her convictions for violating 18 U.S.C. § 1952.

To operate successfully a football parlay card operation, it is necessary for the bookmaker to print the most accurate prediction of football games' point spreads on his parlay cards. He must also obtain this information quickly to print and to distribute the cards. The Las Vegas "line" of predictions is highly regarded in such circles for its accuracy and availability. For this reason, McLeod was stationed in Las Vegas to observe and to copy the line posted in local sport books and to relay this information from a public telephone to the Indianapolis operation. By prearrangement, codefendant Tomlinson would appear daily at one of four public telephones, depending on the day of the week, in an Indianapolis shopping center to receive McLeod's calls.

■ McLeod challenges the court's denial of her motion to suppress all evidence the government obtained by overhearing her speak into a public telephone in Las Vegas. On four separate dates, a government agent stood about four feet from McLeod while she placed her call, and, without the aid of any listening devices, he overheard her give out football line information. Subsequently, telephone records identifying the numbers of the telephones which McLeod called were obtained. McLeod specifically complains that the government obtained no authorization order to intercept her communication. 18 U.S.C. § 2510, et seq. The short answer is that

" 'intercept' means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device," 18 U.S.C. § 2510(4); thus, that statute is patently inapplicable to the facts presented here, since no such device was used. McLeod's Fourth Amendment claim is equally unavailing, for it is clear that "[W]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). We agree with the Second Circuit that "conversations carried on in a tone of voice quite audible to a person standing outside . . . are conversations knowingly exposed to the public." United States v. Llanes, 398 F.2d 880 (2d Cir. 1968). As the agent was located in a public place and overheard the conversation by McLeod without the use of any amplification device, the court properly overruled the motion to suppress.

■ McLeod also challenges the sufficiency of the evidence to show that a telephone call was made on November 10, 1971, as alleged in Counts III and V of the indictment. Although the government produced no toll record verifying this call, the jury could properly infer the existence of such a call from the following circumstantial evidence. McLeod was observed on that day copying the line in a local sports book. She then drove to a public telephone and unsuccessfully attempted to place a call. She next dialed the operator and after a pause she removed a line sheet from her purse and read its contents into the telephone. Within an hour, codefendant Lutz was arrested in Indianapolis. A line sheet was found in his possession bearing a November 10 posting identical to that copied and read by McLeod. Viewing the reasonable inferences in the light most favorable to the government, we find the evidence sufficient to support the jury's conclusion that McLeod completed a telephone call to Indianapolis on November 10, during which she relayed that day's line information.

■ McLeod further argues that the evidence was insufficient to establish violations of 18 U.S.C. § 1952, because, as other sources of line information were readily available to the gambling ring, her acts of transmitting line information to Indianapolis were only incidental to the gambling operation. In United States v. Miller, 379 F.2d 483 (7th Cir. 1967), this court ruled that the use of any facility in interstate commerce need not be essential to the gambling operation; "it need only 'facilitate' the carrying on of illegal gambling. As used in this statute, 'facilitate' means 'to make easy or less hard.'" *Id.* at 486. Clearly, McLeod's line information from Las Vegas contributed to the success of this gambling operation, both because it permitted the codefendants to print and to distribute their cards before football lines from other sources would have been available to them and because its accuracy prevented the occurrence of substantial losses. The evidence thus amply supported the jury's finding that McLeod's telephone calls from Las Vegas facilitated the carrying on of this gambling enterprise.

■ McLeod finally attacks the court's refusal to dismiss certain counts in the indictment. The government suggests that it is unnecessary for us to consider these arguments because McLeod does not challenge Counts II and III, her sentences on those counts being concurrent with her sentences on the challenged counts. There is no jurisdictional bar to a consideration of all counts under concurrent sentences where adverse collateral consequences may flow from the convictions. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). "Since we cannot say that there is no possibility of undesirable collateral consequences," United States v. Tanner, 471 F.2d 128, 140 (7th Cir. 1972), this court, in the exercise of its discretion[1], will consider the validity of the challenged counts.

■ Respecting the conspiracy count, McLeod first argues that the indictment is insufficient because agreement is not defined. We note that the indictment alleged that the defendants did "agree together and with each other" to use telephone facilities to carry on a gambling business in violation of Indiana law and 18 U.S.C. §§ 1084, 1952. "To allege that the defendants conspired is, at least, to allege that they agreed to do the matters which are set forth as the substance of their conspiracy." United States v. White, 171 F. 775 (2d Cir. 1909); *accord,* United States v. Manetti, 323 F.Supp. 683 (D.Del.1971). We find, therefore, that the indictment sufficiently defined the agreement element of the conspiracy. United States v. Deutsch, 243 F.2d 435 (3rd Cir. 1957) and Hamner v. United States, 134 F.2d 592 (5th Cir. 1943), cited by McLeod, are inapposite, for the indictment here clearly alleged the offenses which the defendants agreed to commit and thus defined the object of the agreement and not simply a course of conduct.

■ Next, McLeod contends that the conspiracy count is indistinguishable from the substantive counts which charge the defendants with the joint commission of the same offense which is the object of the conspiracy. In United States v. Hunter, 478 F.2d 1019 (7th

1. We emphasize that we need not have reached these issues, for while "the existence of concurrent sentences does not remove the elements necessary to create a justiciable case or controversy," the concurrent sentence rule has continuing validity as a rule of judicial convenience. Benton v. Maryland, 395 U.S. 784, 790–791, 89 S.Ct. 2056, 2060, 23 L.Ed.2d 707 (1969). The Supreme Court recently demonstrated the operation of the concurrent sentence rule as a rule of judicial convenience in Barnes v. United States, 412 U.S. 837, 848 n. 16, 93 S.Ct. 2357, 2364, 37 L.Ed.2d 380 (1973): "Although affirmance of petitioner's conviction on two of the six counts carrying identical concurrent sentences does not moot the issues he raises pertaining to the remaining counts [citing *Benton*], we decline as a discretionary matter to reach these issues." *Accord,* United States v. Tager, 479 F.2d 120 (10th Cir. 1973), cert. den., 414 U.S. 1162, 94 S.Ct. 924, 39 L.Ed.2d 115 (1974).

Cir. 1973), this court stated that a conspiracy to commit an offense merges with the completed offense if the substantive offense requires concerted action of two wrongdoers and they are indicted for both conspiracy and the substantive crime. *Id.,* at 1023–1024. The Court held an indictment may not properly charge both conspiracy to violate 18 U.S.C. § 1955 and the substantive violation of that act. But unlike the definition of § 1955, which requires five or more participants in an illegal gambling operation, neither a § 1952 nor a § 1084 offense by its terms "necessarily involves the mutual cooperation of two persons," United States v. Zeuli, 137 F.2d 845, 846 (2d Cir. 1943), or "requires for its commission some reciprocal action of the conspirators." United States v. Center Veal & Beef Co., 162 F.2d 766, 770 (2d Cir. 1947). Thus, as the Fourth Circuit found in United States v. McGowan, 423 F.2d 413 (4th Cir. 1970), in which defendants challenged their convictions for conspiracy to violate §§ 1084, 1952 and 1953 and for four counts of § 1952 joint offenses, there is not an identity of elements between the crime of conspiracy and a § 1952 offense. In language pertinent here, the court stated, "The fact that some of that evidence may have served double duty by also supporting the charge of conspiracy is of course immaterial." Id. at 416 (citing Nye & Nissen v. United States, 336 U.S. 613, 618–619, 69 S.Ct. 766, 93 L.Ed. 919 (1949)). We therefore uphold the validity of the conspiracy conviction.

▮ Respecting the substantive counts, McLeod contends that Counts II and IV, relating to the October 26 call, and Counts III and V, relating to the November 10 call, charge the same offense and therefore the indictment is multiplicitous, violating McLeod's fifth amendment right against double jeopardy. The premise of McLeod's argument is that conduct generally proscribed in § 1952 is specifically prohibited in § 1084. However, two offenses may be separately prosecuted and punished if each requires proof of an element which the other does not. Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Unlike a § 1084 prosecution, to obtain a conviction under § 1952, the government must allege and prove as an element of the offense that the defendants carried on an activity in violation of state law. This court has stated, "Offenses are not the same for purposes of the double jeopardy clause simply because they arise out of the same general course of criminal conduct." United States v. Bruni, 359 F.2d 807, 809 (7th Cir. 1966), cert. den., 385 U.S. 826, 87 S.Ct. 59, 17 L.Ed.2d 63 (1966). In United States v. Smith, 209 F.Supp. 907 (E.D. Ill.1962), the court applied that rule in holding that the defendant was not placed in double jeopardy merely because the indictment alleged that conduct occurring on two different dates was violative of both § 1084 and § 1952. The reasoning of the court is sound, and we similarly find no violation of McLeod's constitutional rights nor multiplicity in the indictment. Moreover, this result is logically compelled by our decision in United States v. Ruthstein, 414 F.2d 1079 (7th Cir. 1969), in which we held that § 1084 did not preempt similar state statutes which provided the definitional predicates for § 1952 prosecutions.

Affirmed.