UNITED STATES of America,
Plaintiff-Appellant,

v.

ONE (1) LOT OF TWENTY–FOUR THOUSAND NINE HUNDRED DOLLARS ($24,900.00) IN U.S. CURRENCY, Defendant,

Robert Chemaly,
Claimant-Defendant-Appellee.

No. 84–5207.

United States Court of Appeals,
Eleventh Circuit.

Sept. 17, 1985.

---

Stanley Marcus, U.S. Atty., Michael W. Burnbaum, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellant.

Lawrence Rosen, Miami, Fla., for claimant-defendant-appellee.

Before GODBOLD, Chief Judge, HILL, Circuit Judge, and PECK *, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

Appellant United States appeals a district court order dismissing its complaint for forfeiture *in rem*, brought under 31 U.S.C. § 5317(b). The district court held that the complaint failed to state a claim under 31 U.S.C. § 5317(b) because it did not allege that Robert Chemaly, the traveler who allegedly failed to report the currency in compliance with 31 U.S.C. § 5316, acted with knowledge of the currency reporting requirements. We affirm, holding that such knowledge is an element of a civil forfeiture action brought pursuant to 31 U.S.C. § 5317(b).[1]

## FACTS

In 1982, the United States Customs Service seized $24,900 from Robert Chemaly at Miami International Airport. Chemaly,

---

\* Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. The government in its complaint alleged in paragraph three that "Robert Chemaly *knowingly transported* the defendant One (1) Lot of Twenty-Four Thousand Nine Hundred Dollars ($24,900) in United States Currency from a place in the United States to or through a place outside the United States." Record at 1 (emphasis added). By holding as we do here, we do not also hold that the allegation above, which includes the "knowingly transported" language, is not sufficient to allege knowledge of the currency reporting requirements. We express no opinion whatsoever on that matter. The government's position throughout this case has been that knowledge of the reporting requirements is not required and that the statutory requirement that the currency be "knowingly transported" requires only that the travelers know they are carrying the currency. Repeatedly, it has made clear that it need not, and has not, alleged knowledge of the reporting requirements. The government has never argued in the alternative that, even if knowledge of the reporting requirements is an element in a forfeiture action, the "knowingly transported" language in paragraph three is sufficient to make that allegation. Since the government does not make this argument as a ground for reversing the trial court's dismissal order, we do not consider the argument.

who was attempting to leave the United States for Aruba with the currency on his person, failed to report his exportation of currency in excess of $5000, as then required by 31 U.S.C. § 5316.[2] Chemaly subsequently was indicted and convicted of violating 18 U.S.C. § 1001 and former 31 U.S.C. § 1101 (1976) (recodified at 31 U.S.C. § 5316). That conviction has been overturned by this court. *United States v. Chemaly*, 741 F.2d 1346 (11th Cir.1984).

A complaint for forfeiture *in rem* was filed against the defendant currency. Chemaly filed a claim of possession to the currency and a motion to dismiss the complaint on the ground that it failed to allege that he acted with knowledge of the reporting requirements of 31 U.S.C. § 5316. The district court granted the motion. The United States filed notice of appeal.[3]

## DISCUSSION

At the time the currency was seized, 31 U.S.C. § 5316 required, among other things, that a person file a currency transaction report when that person "knowingly ... transports ... monetary instruments of more than $5000 at one time ... from a place in the United States to or through a place outside the United States...."[4] Civil forfeiture statute, 31 U.S.C. § 5317(b), provided that "[a] monetary instrument being transported may be seized and forfeited to the United States Government when a report on the instrument under [31 U.S.C.] section 5316 ... had not been filed...."[5]

The government argues that specific knowledge of the reporting requirement of section 5316 is not an element of a section 5317 civil forfeiture action. According to the government, the term "knowingly," as used in section 5316, applies only to transportation of the currency, not to the reporting requirements. The only knowledge requirement is that the traveler know he or she is importing the currency.

This is a question of first impression in our circuit. Not too long ago, the former Fifth Circuit, whose precedent binds us, faced a similar question in the context of a criminal prosecution for violation of the reporting requirements of former section 1101 (now section 5316). Under former 31 U.S.C. § 1058 (now 31 U.S.C. § 5322), a person is subject to criminal penalties for "willfully violating" the reporting requirements of section 1101 (now section 5316).[6] The former Fifth Circuit held that "the

---

**2.** *See infra* note 4.

**3.** Appellee Chemaly moved to dismiss the government's appeal for lack of jurisdiction. That motion, which was carried with the case, is now denied. Appellant's notice of appeal was timely filed in compliance with Federal Rule of Appellate Procedure 4(a)(1), since it was filed within sixty days of the entry of the trial court's March 15th order. That March order, not the January 18th order denying the government's motion for reconsideration and granting the government twenty days to file an amended complaint, was the final, appealable order. *Jung v. K & D Mining Co.*, 356 U.S. 335, 78 S.Ct. 764, 2 L.Ed.2d 806 (1958).

**4.** Section 5316 was amended in October of 1984. Only two changes were made. First, an attempt provision was added, requiring persons to file reports when they "attempt[ ] to transport" the currency. Second, the $5000 amount was raised to $10,000, so that the report is now required only when more than $10,000 is transported. *See* Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Title II, Chapter IX,

section 901(c) [hereinafter cited as "Crime Control Act of 1984"]. *See also* 31 U.S.C.A. § 5316 (Supp.1985). The "knowingly" language was not changed.

**5.** Section 5317(b) was amended in October of 1984. No changes were made to the language of the provision. The only change is that it now appears as subsection (c) of section 5317, rather than subsection (b). *See* Crime Control Act of 1984, *supra* note 4, at section 901(d). *See also* 31 U.S.C.A. § 5317(c) (Supp.1985).

**6.** Up until 1984, the criminal provision provided, in relevant part, "[a] person willfully violating this subchapter or a regulation proscribed under this subchapter ... shall be fined not more than $1,000, imprisoned for not more than one year, or both." That statute was amended in October of 1984, so that the penalties are now "not more than $250,000, or imprisonment not more than five years, or both." Crime Control Act of 1984, *supra* note 4, section 901(b). *See also* 31 U.S.C.A. § 5322(a) (Supp. 1985). The "willfulness" requirement was not changed.

terms *knowing* [in the reporting statute] and *willful* [in the criminal statute] require proof of the defendant's knowledge of the reporting requirement and his specific intent to commit the crime." *United States v. Granda*, 565 F.2d 922, 925–26 (5th Cir. 1978) (emphasis in original). *See also United States v. Warren*, 612 F.2d 887 (5th Cir.) (*en banc*), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980); *United States v. Schnaiderman*, 568 F.2d 1208 (5th Cir.1978).[7]

■ It is clear that the terms of a statute cannot have one meaning when a criminal prosecution is brought and another when a civil action is brought. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). This would indicate that if the terms "knowingly transport," in section 5316, require knowledge of the reporting requirements in the context of a criminal action, they do so in the context of a forfeiture action as well. However, appellant United States argues that the decision in *Granda* and the other criminal cases is not controlling, or even applicable, because the criminal provision requires that the violation of the reporting requirements be a "wil˜ul" one, while the forfeiture provision has no such "willfulness" requirement. It requires only a failure to file a report.

This distinction, based on the "willfulness" requirement of the criminal statute, was rejected by the only other circuit court to address the issue we now face. In *United States v. $48,595*, 705 F.2d 909, 914 (7th Cir.1983) (emphasis in original), the Seventh Circuit stated, "[i]t is not clear that this distinction is warranted in light of the Fifth Circuit's reliance on the language of *both* Sections 1058 ["willfulness"] and 1101 [now 5316] ["knowingly"]". *See, e.g., Granda*, 565 F.2d at 925–26 (emphasis in original) ("We ... hold that the terms *knowing* and *willful* require proof of the defendant's knowledge of the reporting requirements and his specific intent to commit the crime"); *Schnaiderman*, 568 F.2d at 1211 ("This court [in *Granda*] ... held that since 31 U.S.C.A. § 1101 requires 'knowing' transportation and since § 1058 requires a 'willful' violation, there must be proof of the defendant's knowledge of the reporting requirement and his specific intent to commit the crime"). Relying on *Granda*, the Seventh Circuit indicated that knowledge of a reporting requirement is an element in a forfeiture case.[8]

At least one court has suggested that, in *Granda*, the Fifth Circuit seemingly derived the knowledge requirement from the term "knowingly" in section 5316 and the specific intent requirement from the term

---

7. When these cases were decided, the reporting provision was codified at 31 U.S.C. § 1101; the criminal provision at 31 U.S.C. § 1058. In 1982, these provisions were recodified at 31 U.S.C. § 5316 and 31 U.S.C. § 5322, respectively. Public Law 97–258, Sept. 13, 1982, 96 Stat. 995. No relevant changes were made to the wording of these provisions.

8. *United States v. $48,595* was an appeal from the denial of a Rule 60(b) motion for relief from a default judgment entered in a forfeiture action brought under former 31 U.S.C. § 1102(a) (1976) (recodified as § 5317(b) (Supp.1982)). The district court had denied the motion on the ground that there was no meritorious defense to the forfeiture. Claimant/movant's main defense was that he did not know about the reporting requirements. The Seventh Circuit thus faced the question of whether lack of knowledge of the reporting requirements is a defense. The Court answered affirmatively, relying on two alternative rationales. One, as noted in the text,

was that knowledge of the reporting requirements is an element in a forfeiture action. The other was that the forfeiture statute may well grant discretion to the district court to deny forfeiture on grounds such as lack of knowledge of the reporting requirements. Because under either rationale the movant may well have had a defense to the forfeiture, the Seventh Circuit held that the trial court abused its discretion in denying the Rule 60(b) motion and reversed and remanded.

Because we find the legislative history to indicate that Congress intended knowledge of the reporting requirements to be an element of a forfeiture case, *see infra* pp. 1534–35 we do not agree with the Seventh Circuit's alternative holding based on judicial discretion. This, of course, is not to say that courts do not have discretion in forfeiture cases. Here we hold only that knowledge of the reporting requirements is an element of the forfeiture action, not a matter for judicial discretion.

"willfully" in the criminal provision.[9] *United States v. $40,500*, Case No. 78–3029 Civ–CA, slip op. at 7 (S.D.Fla. June 26, 1980). We further note that the terms "willful" and "knowing" often are construed as synonymous. *E.g., United States v. Murdock*, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933); *United States v. Kelley*, 546 F.2d 42, 42 (5th Cir. 1977); *Townsend v. United States*, 95 F.2d 352, 357 (D.C.Cir.1938). *See also* Black's Law Dictionary 1012 (4th ed. 1951) (defines "knowingly" as "[w]ith knowledge; consciously; intelligently, willfully; intentionally"). Whatever the *Granda* court's reason for relying on the "knowingly" language, as well as the "willfully" language, the crucial fact is that the court did so. This cannot be ignored.

Appellant United States also argues that *Granda* and the other criminal cases are not controlling because the rationale of these decisions rested in large part on the fact that the statute being interpreted was a criminal statute. It is true that the court in *Granda*, 565 F.2d at 926, stated,

> Congress, by adding these terms ["knowing" and "willful"], took this regulatory statute out of the ranks of strict liability type crimes. To us, this makes sense because the failure to report, when one is without knowledge of the reporting requirement, must be classified as a 'nonfeasance' as opposed to a 'misfeasance.' Since the purpose of all law, and the criminal law in particular, is to conform conduct to the norms expressed in that law, no useful end is served by prosecuting the 'violators' when they have no knowledge of the law's provisions.

We do not find this passage or any other comments in *Granda* to indicate that involvement of a criminal statute was essential to the decision. The same rationale applied in *Granda* can be applied to the forfeiture statute, since the legislative history indicates that Congress intended for the reporting requirements of section 5316 and the forfeiture provisions of section 5317 to motivate travelers to file currency reports. *See* discussion *infra* pp. 1534–1535.

For the foregoing reasons, we find *Granda* and the other criminal cases probably controlling, and, at the very least, persuasive authority.[10] However, we need not, and do not, rest our decision on these cases alone. The legislative history of section 5316 and the civil forfeiture provision indicates that Congress intended knowledge of the reporting requirements to be an element of a forfeiture action.

 Section 5316 and the civil forfeiture provision are part of the Currency and Foreign Transactions Reporting Act of 1970. The purpose of the Act is to require reports of foreign transactions where such reports would be helpful in investigations of criminal, tax and regulatory violations. Senate Committee on Banking and Currency, S.Rep. No. 1139, 91st Cong., 2d Sess. 7 (1970) (hereinafter cited as *Senate Report*); House Committee on Banking and Currency, H.R.Rep. No. 975, 91st Cong., 2d Sess. 19–20, *reprinted in* 1970 U.S.Code Cong. & Ad.News 4404–05 (hereinafter cited as *House Report*). The Act is aimed solely at obtaining reports of certain transactions. *See id.; Senate Report* at 7. There is

---

**9.** On appeal, neither party has raised the issue of whether specific intent is required in a forfeiture action. That issue is not decided here.

**10.** We note that our court, at least by implication, has in the past viewed *Granda* as particularly relevant and possibly controlling in the forfeiture context. In *United States v. $6,250*, 706 F.2d 1195 (11th Cir.1983), a section 5317 forfeiture case, this court held that physical presentation of the currency to a customs patrol officer ("CPO") did not constitute sufficient compliance with former section 1101 (now section 5316) to avoid forfeiture, since the statute

does not require surrender of currency, but rather the reporting of certain information to the Treasury Department. The court noted that

> CPO Hill's statements to Smith clearly distinguish this case from cases like *United States v. Granda*, 565 F.2d 922 (5th Cir.1978), in which the government's failure to take affirmative steps to inform travelers of the requirements of the statute made it impossible for the government to demonstrate that the travelers had knowledge of their obligation to report the currency.

*$6,250*, 706 F.2d at 1197 n. 2.

nothing illegal in transporting currency across the border. Only the failure to report gives rise to any liability. *See Warren,* 612 F.2d at 891; *Granda,* 565 F.2d at 926. Particularly when the Act was first passed, travelers were not likely to know about the requirements or even to suspect there may be any such reporting requirements. Thus, the purpose of the Act—obtaining reports—could only be achieved if travelers were made aware of the reporting requirements. If one is unaware of the reporting requirement, one cannot be expected to comply, notwithstanding the possibility of a subsequent forfeiture, or any other sanction. To interpret "knowingly" as used in the reporting requirement as not requiring knowledge of the reporting requirements would in effect mean that travelers need not be made aware of the reporting requirements: even if a criminal action could not be brought absent knowledge, a forfeiture action and perhaps other actions[11] could. We find that such an interpretation of "knowingly" would fly in the face of Congress' goal of obtaining currency reports. *Cf. Granda* 565 F.2d at 926 ("Since the purpose of all law ... is to conform conduct to the norms expressed in that law, no useful end is served by prosecuting the 'violators' when they have no knowledge of the law's provisions").

The legislative history also indicates that Congress did not intend for the reporting requirements to damage international trade and commerce or in any way prevent money from moving freely into and out of the United States. *House Report* at 13; *Senate Report* at 7–8. As the Senate Committee on Banking and Currency stated,

[T]he purpose of this chapter is to require reports on currency exports and imports and not to limit or impede the free flow of currency in international commerce. No one would be prevented from taking currency out of or into the country in whatever amounts he desired as long as the reporting requirements were observed.... [T]his legislation should in no way be interpreted as the beginning of exchange controls.

*Id.* at 7. *See also Warren,* 612 F.2d at 891 ("In enacting the currency reporting statutes, ... Congress sought to avoid damage to international trade and commerce. Incident to that concern was an appreciation that travelers are both a part of and creators of international trade and commerce"). In *Warren,* the Fifth Circuit, *en banc,* cited this portion of the legislative history as a reason for holding that knowledge of the reporting requirements is an element in a criminal prosecution. *Id.* at 890–91. This reasoning applies with equal force in the forfeiture context. Failure to require knowledge of the reporting requirements could well impede the mobility of international capital into and out of the United States. A signal would be sent that United States law may well be filled with booby-traps that spring without warning to grab the currency of unsuspecting travelers.

We are aware that some district courts have indicated that they would hold differently than we do here.[12] Of particular note is *United States v. $5393,* 583 F.Supp. 1447 (E.D.N.Y.1984), since the reasoning employed there suggests that our holding may put us in conflict with the law of the First Circuit. In *$5393,* the trial court reached the conclusion that knowledge of the re-

---

**11.** Under the Currency and Foreign Transactions Report Act, failure to file the required reports may lead to imposition of a civil fine, as well as criminal penalties and forfeiture. *See* 31 U.S.C. § 5321.

**12.** In *United States v. $4,255,625.39,* 528 F.Supp. 969, 972 (S.D.Fla.1981), the court stated that knowledge of the reporting requirements is not required in a forfeiture action. Although the court did not expressly state its reason for this conclusion, it seems to be based on the "plain meaning" of the statute. We do not find the

meaning of "knowingly" to be plain from the face of the statute.

In *Ivers v. United States,* 413 F.Supp. 394, 401 n. 9 (N.D.Cal.1975), *aff'd, in part and rev'd in part on other grounds,* 581 F.2d 1362 (9th Cir. 1978), the court indicated that lack of knowledge of the reporting requirements may be, at most, a ground for remission of the forfeiture by the Secretary of the Treasury. For the reasons previously stated in the text, particularly the legislative history, we reject this view.

porting requirements was not an element in a forfeiture action on the basis of its reading of the First Circuit's decision in *United States v. $6,700*, 615 F.2d 1 (1st Cir.1980). In *$6,700*, one of two co-administrators of a deceased's estate transported $6,700 of the estate's money into the United States without filing the required currency report. The money was seized. The estate opposed forfeiture and claimed entitlement to the money on the ground that the money had been embezzled from the estate and the estate, an innocent party, should not be penalized. The First Circuit refused to interpret the currency reporting statute so as not to result in forfeiture here, stating "[s]ection 1101(a) [now section 5316] specifies the persons required to file a report and section 1102(a) [now section 5317] subjects to forfeiture any monetary instruments for which a required report has not been filed; forfeiture is not tied to or dependent upon the wrongdoing of the *owner* of the monetary instruments." *Id.* at 3 (emphasis added). Relying on this passage, the district court in *$5393* indicated that lack of knowledge of the reporting requirements is no defense. However, no claim was made in the First Circuit case, *$6,700*, as there was in the district court case, that the *traveler* who transported the money was "innocent" in the sense that he lacked knowledge of the reporting requirements. *$6,700* involved a totally different question from the one we face here and we do not find the rationale employed there transferable: nothing in the language of the statute or its legislative history indicates that the innocence of the *nontransporting* owner or claimant prevents forfeiture; but there is an indication that the *transporter's* lack of knowledge of the reporting requirements does prevent forfeiture. We thus reject the reasoning of the trial court in *$5393*, and conclude that nothing we have said in this opinion conflicts with the First Circuit's decision in *$6,700*.

We note that our holding here will not place customs or other law enforcement officials under any greater burden than they already bear. Under *Granda* and the other criminal cases, they essentially have an affirmative duty to inform travelers of the currency reporting requirements. *E.g., Granda,* 565 F.2d at 926 ("Proof of the requisite knowledge and willfulness ... is almost impossible unless affirmative steps are taken by the government to make the laws' requirements known"). Nor do we expect our holding will cause there to be fewer forfeitures. As long as law enforcement officials take affirmative steps to make travelers aware of the reporting requirements, we would imagine that knowledge of the reporting requirements could be shown in virtually all cases.

For the foregoing reasons, the order of the district court is

AFFIRMED.