**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Fernando FUENTES–COBA,**
**Defendant-Appellant.**

**No. 83–5011.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 13, 1984.

there was a reasonable likelihood that a convic- tion could be obtained at the second trial.

McMaster & Forman, P.A., James D. McMaster, Miami, Fla., Randy Frances Kandel, Shereff, Friedman, Hoffman & Goodman, New York City, for defendant-appellant.

Stanley Marcus, U.S. Atty., Paul A. Di-Paola, Linda Collins-Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HENDERSON and CLARK, Circuit Judges, and ATKINS *, District Judge.

ALBERT J. HENDERSON, Circuit Judge:

Fernando Fuentes-Coba appeals his jury conviction in the United States District Court for the Southern District of Florida on a charge of conspiracy to violate the Trading with the Enemy Act and the Cuban Assets Control Regulations, pursuant to 18 U.S.C. § 371, 50 U.S.C. Appendix § 5(b) and 31 C.F.R. § 515.201.

The Cuban Asset Control Regulations, 31 C.F.R. § 515.201 *et seq.* ("Regulations"), were promulgated in 1963 pursuant to the Trading with the Enemy Act of 1917 ("Act").[1] The Regulations prohibit all com-

---

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The Act gives the President broad authority to impose comprehensive embargoes on foreign countries as a means of dealing with emergencies during peacetime and in times of war.

mercial interchange with Cuba or Cuban nationals, with specific exemptions as set out in the Regulations.

In 1977, certain restrictions on the previous policy of prohibiting free travel by Americans to Cuba were removed by President Carter. Although the Cuban trade embargo remained firmly in effect, the Regulations were amended to establish a general authorization for Americans to travel to Cuba and to spend money incident to that travel. The general authorization also allowed American-owned travel agencies to provide travel service and services incident to travel to Americans going to Cuba.

Beginning in March 1979, American Airways Charters, Inc. ("AAC") furnished chartered aircraft services for flights to Cuba to Havanatur, the travel agency exclusively authorized by Cuba to provide tourist services in Cuba. The appellant, Fuentes-Coba, was the president and chief operating officer of AAC.

In the latter part of 1979, the United States Treasury Department's Office of Foreign Assets Control designated Havanatur as a Cuban national company pursuant to § 515.306 of the Regulations. The effect of this designation was to prohibit any transactions between Americans and Havanatur.

According to testimony adduced at the trial, the chief operating officers of Havanatur then formed successor companies in order to continue their operations. Fuentes-Coba met with these officers and discussed strategies to disguise what proved to be a continuing AAC association with the Havanatur principals. The participants specifically discussed the necessity of a license to transport goods to Cuba. Fuentes-Coba stated that he was aware of the licensing requirement.

As part of the dealings with Havanatur, AAC transported several items of contraband into Cuba. Among the items transported were four Pepsi-Cola dispensing machines, communications equipment, office equipment and supplies, numerous quantities of foodstuffs, United States currency, perfume, scuba equipment, mail, auto parts and tires and aircraft parts. Testimony at the trial also revealed that computer equipment had been obtained in the United States and sent to Cuba.

According to the testimony, Fuentes-Coba personally concealed certain of the items in duffel bags before they were loaded on the aircraft. He also often accompanied his company van to the airport in an effort to avoid United States Customs inspection of the goods.

Fuentes-Coba was tried for his role in the shipment of these goods to Cuba, and was convicted of conspiracy. He was sentenced to one year of imprisonment and ordered to pay a fine of ten thousand dollars ($10,-000.00). This appeal followed.

I.

Fuentes-Coba filed a pretrial motion for a change of venue contending that adverse publicity made it impossible to impanel an impartial jury in south Florida on issues related to trade with Cuba. The evidence presented in support of the motion consisted of an extensive public opinion survey of potential jurors and an analysis of media coverage of Cuba in the south Florida press conducted by a purported expert on jury prejudice.

A criminal defendant is not constitutionally entitled to a trial by jurors ignorant of issues and events. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 756 (1961). Rather, due process requires only that a jury be seated which can put aside any impressions gained from pretrial publicity and render a fair verdict based exclusively on the evidence presented in court. 366 U.S. at 723, 81 S.Ct. at 1643, 6 L.Ed.2d at 756; *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594–95 (1975). In the event of juror exposure to pretrial publicity, a defendant may successfully appeal his conviction only if he is able to demonstrate that actual prejudice resulted from the publici-

ty. *Irvin v. Dowd,* 366 U.S. at 723, 81 S.Ct. at 1643, 6 L.Ed.2d at 756; *United States v. Thompson,* 615 F.2d 329, 333 (5th Cir.1980).[2]

■ After reviewing the survey evidence presented by Fuentes-Coba and determining that no prejudice had been demonstrated, the district court conducted a voir dire examination of the jury exploring any potential bias of the jurors. The jurors responded that they could be fair and impartial in the case. Counsel for the appellant also extensively inquired of the veniremen with respect to their feelings about Cuba and Cuba-oriented organizations. Again, no juror expressed concern about the influence of outside factors. Finally, the government interrogated the jurors for possible bias and none responded affirmatively. Thereupon, both the government and the defendant accepted the panel and proceeded with the selection of the jury which heard the case. The defendant did not renew his motion for change of venue.

The thorough inquiry of the jury panel with respect to potential bias was sufficient to safeguard the right of Fuentes-Coba to an impartial trial.

## II.

Fuentes-Coba asserts that his conviction cannot stand because his acts were fully authorized under the licensing provisions of the Cuban Foreign Assets Control Regulations, 31 C.F.R. 515.201 *et seq.,* and the Export Administration Regulations, 15 C.F.R. 371 *et seq.* In the alternative, he argues that even if his activities were technically in excess of the scope of his licensed authority, his conviction should be overturned because the Regulations are so vague and ambiguous that they fail to pass muster under the due process guarantee of the fifth amendment.

Under the broad language of § 515.201, which establishes the general embargo against transactions in which Cuba or Cuban nationals have an interest, a transaction is permitted only if it is exempted under the more specific language of a subsequent regulation. Fuentes-Coba characterizes each of the items he is charged with shipping from this country to Cuba as a specifically exempted good.

He primarily relies on § 515.560, which authorizes transactions incident to arranging or assisting travel to, from or in Cuba, including arranging hotel accommodations, ground transportation, local tours and similar travel activities. He contends that this regulation expressly authorized his exportation of the many items identified at the trial. He claims that all of the items were utilized in the tour operations.

The precedent and practice of this court demands an interpretation of the Act and Regulations with "a common sense regard for regulatory purposes and plain meanings." *United States v. Frade,* 709 F.2d 1387, 1401 (11th Cir.1983). Applying this standard to the facts before us, we conclude that the appellant's shipping activities went well beyond the § 515.560 exceptions to the Act.

■ We simply do not agree with the appellant that the shipment of such items as airplane parts, bulk quantities of United States coins, and communications equipment can reasonably be considered as incident to travel, as specified in the Regulations. If we accept the appellant's argument, the exception to the trade embargo would become so broad that the embargo itself would lack substance. We cannot countenance such a claim.

■ Neither can we embrace the appellant's companion claim that shipment of the majority of the items was authorized by § 515.333 which governs general baggage and gift parcels authorized for transport by Cuban-bound travelers.[3] First, many of

---

2. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

3. Regulation 515.533 incorporates in full the baggage and gift parcel regulations issued by the Export Administration, U.S. Department of Commerce, set out at 15 C.F.R. § 371.6 and 371.18.

the items seized simply fail to fit the description of property normally transported in a traveler's baggage for his or her personal use. Second, the items were not marked as gift parcels, as specifically required by the regulation, and many do not fall into the property categories authorized in the regulation.

Finally, we find no grievous ambiguity in the Regulations themselves. They are clear in scope and adequately delineate the restrictions in existence. There is no merit in the appellant's due process challenge.

### III.

Guilt under the Act and its Regulations mandates a finding of specific intent—that is, the government must prove that the regulatory provisions were both "actually known" and "deliberately violated" by the defendant. *United States v. Frade*, 709 F.2d 1387, 1392 (citations omitted). Fuentes-Coba maintains that there was no evidence of specific intent and that the jury instruction of the district court was deficient in that it did not enumerate and particularize these elements and issues.

In reviewing the sufficiency of the evidence to support a guilty verdict, the evidence, and all reasonable inferences therefrom, is viewed in the light most favorable to the government. *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590, 624–25 (1974); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942). To prove conspiracy, the government must show an agreement between two or more persons to commit a crime and that the defendant knowingly and voluntarily participated in the illegal venture. *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir.1983). The existence of such an agreement may be proved by circumstantial evidence. *United States v. Tamargo*, 672 F.2d 887, 889 (11th Cir.), *cert. denied* 459 U.S. 864, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982). The burden is on the government to prove that the defendant knew the essential object of the conspiracy. *United States v. Russell*, 703 F.2d 1243, 1249–50 (11th Cir.1983).

Ample evidence was introduced at the trial to support a finding of each of the required elements. Testimony disclosed that Fuentes-Coba personally stowed contraband goods in duffel bags and sometimes supervised loading of the goods onto AAC aircraft. Moreover, the appellant participated in several conversations in which he acknowledged that the goods to be shipped were subject to the trade embargo and the Regulations.

In attacking the specific intent instruction, Fuentes-Coba complains that the court erred in failing to instruct the jury that the lack of specific intent is a complete defense and by neglecting to explain the applicable Regulations.

Fuentes-Coba did not object to the court's instructions either before or after they were given to the jury, and there was no request for additional instructions on these issues. We therefore evaluate the charge under the plain error standard viewing the charge in its entirety and in the context of the entire trial. *United States v. Park*, 421 U.S. 658, 674–75, 95 S.Ct. 1903, 1912–13, 44 L.Ed.2d 489, 502–03 (1975). The conviction will be set aside only where the charge is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or where it seriously affects the fairness, integrity or public reputation of a judicial proceeding. *United States v. Thevis*, 665 F.2d 616, 645 (5th Cir. Unit B), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982).

The instructions given, viewed in the light of the entire charge, clearly reveal that the district court adequately instructed the jury as to specific intent and correctly stated the applicable regulations. The court charged:

The word knowingly, and that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposefully, with the specific intent to do something the law forbids; that it [sic] to say with bad

purpose either to disobey or disregard the law.

Further, having thus instructed the jury, there was no error in the court's failure to also charge that ignorance of the law is a complete defense. *See United States v. Bush,* 599 F.2d 72, 77 (5th Cir.1979); *United States v. Wellendorf,* 574 F.2d 1289 (5th Cir.1978).

 Finally, the trial court's charge on the applicable regulations was clear and simple and carefully explained the specific regulation which formed the predicate for the violation. Fuentes-Coba now complains that the jury should have been apprised of additional regulations which related to one of his affirmative defenses. We can find no plain error in this omission given the fact that he failed to seek such instruction even though he fully amplified on his defenses in his argument to the jury.

### IV.

During the trial, the government called as a witness Stanley Sommerfield, the former chief counsel and director of the Office of Foreign Assets Control, the executive branch office responsible for enforcing the Act and Regulations. Sommerfield explained the embargo and the exemptions pertaining to the travel agency business, as well as the licensing provisions for specific commercial transactions.

Fuentes-Coba contends that the admission of Sommerfield's testimony was improper because it violated the rules proscribing testimony of legislators and executive officials, legal interpretations by expert witnesses, and expert statements reflecting the defendant's guilt. The government replies that Sommerfield's testimony was admissible for the purpose of exploring and evaluating Fuentes-Coba's specific intent to violate the Cuban trade embargo, and that there was no prejudice in its admission.

Fuentes-Coba failed to object to Sommerfield's testimony. In fact, he extensively cross-examined Sommerfield on the meaning and scope of the Regulations in an attempt to develop his own defense theory.

So again we review this claim under the standard of plain error, *United States v. Hernandez-Cuartas,* 717 F.2d 552, 555 (11th Cir.1983), recognizing only that which is obvious and affects the appellant's substantial rights and "where exceptional circumstances make it necessary to avoid a clear miscarriage of justice." *United States v. Cormier,* 639 F.2d 1177, 1182–83 (5th Cir. Unit B 1981).

 As one of his major defenses, Fuentes-Coba alleged that the Regulations are so complex that his misunderstanding of them excused his otherwise criminal conduct. In view of this defense, we are not persuaded that the admission of Sommerfield's testimony was plain error. At the behest of both the government and the appellant, Sommerfield went into great detail to explain the embargo, its exemptions and the licensing provisions for specific commercial transactions. This testimony did not unfairly undermine Fuentes-Coba's specific intent defense, but instead provided the jury with a valuable perspective, fully developed by both sides, from which it could evaluate the issues.

Furthermore, the testimony did not invade the province of the court in its determination of the applicable law, *see Federal Aviation Administration v. Landy,* 705 F.2d 624, 632 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983), or of the jury in its evaluation of the facts in the light of that law. *See Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505, 510 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977).

Sommerfield's comments on the Regulations were certainly useful to the jury in determining how the acts of Fuentes-Coba fit within the Regulations' parameters, but they did not resolve the ultimate question of whether the activities constituted willful violations of the law.

Particularly because Fuentes-Coba did not object to this testimony, and because Sommerfield was thoroughly cross-examined on the issues raised on appeal, we find

no plain error in the admission of his testimony.

## V.

During his closing argument, the prosecutor made an indirect reference to the fact that Fuentes-Coba did not take the stand in his defense. The reference came in a remark on the weight to be given certain testimony.[4] Fuentes-Coba contends that the reference constitutes reversible error.

In this circuit, such remarks constitute reversible error if either (1) it is the prosecutor's manifest intention to comment on the defendant's failure to testify, or (2) the remark was such that the jury would naturally and necessarily take it as a comment on the defendant's failure to testify. *Williams v. Wainwright*, 673 F.2d 1182, 1184 (11th Cir.1982); *United States v. Garcia*, 655 F.2d 59, 64 (5th Cir. Unit B 1981). In making this determination, it is necessary to examine the comments within the context of the total argument. *Id.*

We have examined the prosecutor's remark in this light and find no error requiring a reversal. It appears to have been directed at the alleged failure of the defense to counter or explain certain evidence and was not meant to draw attention to the fact that Fuentes-Coba did not testify. We agree with the district court that the prosecutor did not act deliberately and that the remark was not susceptible of improper interpretation by the jury.

## VI.

At the conclusion of the trial, one juror stated he could not read or write. The district court sequestered the jury and ordered it not to commence its deliberations. The judge then conducted a hearing into the juror's qualifications, finding that he was not qualified to sit on the jury.

During a recess in the hearing, Fuentes-Coba and his attorney were afforded the opportunity to discuss the situation. Upon returning to the courtroom, Fuentes-Coba moved for a mistrial. The district court denied the motion but offered Fuentes-Coba three options: agree to allow the unqualified juror to remain on the jury, stipulate to using eleven jurors, or seat the alternate juror. Both parties then stipulated to permit the unqualified juror to continue with the case.

Fuentes-Coba now claims that the district court erred in leaving the unqualified juror on the panel. He recognizes that a defendant may waive his right to challenge the competency of a juror, *see United States v. Renfro*, 620 F.2d 569, 577 (6th Cir.), *cert. denied*, 449 U.S. 902, 101 S.Ct. 274, 66 L.Ed.2d 133 (1980); *Delgado v. United States*, 403 F.2d 208, 209 (9th Cir. 1968), *cert. denied*, 394 U.S. 966, 89 S.Ct. 1320, 22 L.Ed.2d 568 (1969), but maintains that he did not waive this right because he had moved for mistrial.

We find it anomalous for Fuentes-Coba now to raise this point, since he expressly passed up opportunities to cure the defect in the trial court. Also, we note that since the jury had not yet commenced its deliberations, the court, on its own motion, was authorized to substitute the alternate. *United States v. Gay*, 522 F.2d 429, 435 (6th Cir.1975). Accordingly, we find no error.

The judgment of the district court is AFFIRMED.

4. The prosecutor made the following comment: There were American quarters, three boxes of them, about this big. They were full of quarters. That is what he observed.

Now, there is a violation of the embargo. There is no exception and no defense to it. The only question is did Mr. Fuentes know, the President of American Airways Charters know what was going on with his own company? He wants to suggest, no, he didn't know. He was in Hialeah or here.

The judge will tell you the defendant in a criminal case never has to take the stand and testify and that is important because there are some obvious areas brought up by the cross-examination, by the witnesses that were called by Mr. McMaster which will require your consideration. In effect, there are two sides to the story.