**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Ivonne ADAMES, Defendant–Appellee.**

No. 88–5412.

United States Court of Appeals, Eleventh Circuit.

Aug. 3, 1989.

---

Thomas A.W. Fitzgerald, Linda Collins Hertz, and Harriett R. Galvin, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Jon May, May & Cohen, P.A., Miami, Fla., for defendant-appellee.

Before CLARK and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

It is alleged in two counts of a certain indictment that Ivonne Adames knowingly and willfully exported and attempted to export firearms on the United States Munitions List without an export license, in violation of 22 U.S.C.A. § 2778, and in another count that she conspired with her brother, Ivan Blasser, to commit those two substantive offenses, in violation of 18 U.S.C.A. § 371. Following the presentation of evidence and arguments, the jury determined that Adames was guilty as charged in the indictment. The district court subsequently granted Adames' post-trial motion for judgments of acquittal, however, opining that the evidence was insufficient to prove that Adames acted with the requisite specific intent. *See United States v. Adames*, 683 F.Supp. 255 (S.D.Fla.1988). The United States asserts on appeal that it adequately proved all elements of the offenses; it requests that we reverse the judgments of acquittal and reinstate the jury's verdicts.

### A.

In reviewing the district court's decision to set aside the jury's verdicts because of insufficiency of the evidence, we do not apply a deferential standard of review; rather, we independently judge the propriety of that decision according to the oft-cited standard endorsed by the Supreme Court in *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942): "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." *See United States v. Greer*, 850 F.2d 1447, 1450 (11th Cir.1988).

### B.

Viewing the evidence in the light most favorable to the government, the facts of

this case are these. Ivonne Adames, at all relevant times, was a vice-consul at the Panamanian consulate in Miami, Florida. Her brother, Ivan Blasser, owned Proinssa, an investigation and security firm in Panama. Blasser began traveling to Miami in 1986 to purchase supplies, including firearms, from Metro Dade Public Safety (MDPS), a police surplus store. Over the course of the next year, Blasser made four bulk purchases from MDPS. He was informed on at least two occasions that certain specified items could not be exported without a license.

Adames, at Blasser's request, secured letters approved by the Consul General of the Panamanian consulate authorizing each purchase Blasser made, a prerequisite for Panamanian citizens procuring firearms in the United States. At times, moreover, she picked up that which her brother had purchased and delivered it to Air Panama for shipment to Blasser in Panama. Economic and practical reasons dictated that Adames arrange freight. By having her consign the shipments to a Panamanian agency or official, Blasser could avoid significant shipping charges since Air Panama waived the fees in such circumstances as a courtesy to government employees. The consignees of all but one of these shipments were Panama's Department of National Investigations (DENI), and Major Madrinan, DENI's chief officer and a close friend of Blasser. The sole shipment not consigned to DENI or Major Madrinan was mistakenly consigned by Adames to Proinssa. When questioned by employees of Air Panama upon delivery of the shipment, Adames was untruthful; she said that Proinssa was a recently-created governmental agency.

In July 1987, when Adames appeared at MDPS to pick up Blasser's third order, she executed certain Bureau of Alcohol, Tobacco, and Firearms forms at the request of Oscar Paz, owner of MDPS. Stamped in red ink on the sales invoice was the following notice drafted by MDPS's attorney:

### EXPORT NOTICE

Certain products may not be exported from the U.S.A. without specific approval from the Department of Commerce (Part 375, Export Administration) and/or Department of State (Title 22, Parts 121–128, ITAR). It is the BUYER'S responsibility, not the SELLER'S, to obtain such licensing unless agreed to otherwise.

Adames initialed this notice.

The following September, however, when Adames was arranging for the shipment of another of Blasser's orders, she refused to sign the forms. Her explanation to Paz was that the deteriorating political relationship between the United States and Panama caused her concern; she wanted to avoid any confusion as to the identity of the person buying the weapons. Blasser thereafter flew to Miami to accept delivery of the order himself. He also refused to execute the documents; however, an inexperienced sales clerk released the firearms without Blasser's signature. Blasser then delivered the guns to Air Panama for shipment, but the shipment was seized by Customs prior to departure. The following day, over the objections of the Consul General, Adames issued a backdated consular letter purportedly authorizing the purchase of the firearms seized the day before by Customs. Adames explained that the letter was backdated at the request of a MDPS employee. Customs' subsequent investigation revealed that neither Adames nor Blasser possessed the licenses required for any of the shipments of firearms to Panama. An indictment followed.

### C.

The commercial export of arms and ammunition from the United States is governed by the Arms Export Control Act (AECA), 22 U.S.C.A. § 2778, and the International Traffic in Arms Regulations, 22 C.F.R. §§ 121–30. Persons desiring to export certain listed munitions must register with the State Department's Office of Munitions Control and obtain an export license for each shipment of arms abroad. 22 C.F.R. §§ 122–23. It is undisputed that Adames twice assisted her brother in exporting controlled firearms without having

obtained a license, as alleged in the indictment.

Section 2778(c), however, imposes criminal sanctions only on those persons who "willfully" violate the AECA and the regulations promulgated thereunder. 22 U.S.C. A. § 2778(c) (West Supp.1989). In *United States v. Davis,* 583 F.2d 190 (5th Cir.1978), the court held that this requirement of willfulness connotes a voluntary, intentional violation of a known legal duty. *Id.* at 193 (adopting the Ninth Circuit's analysis in *U.S. v. Lizarraga–Lizarraga,* 541 F.2d 826 (9th Cir.1976)). "Because the items covered by the statute are spelled out in administrative regulations and include items not known generally to be controlled by the government, [we infer] that Congress did not intend to impose criminal penalties on innocent or negligent errors." *Davis,* 583 F.2d at 193.

The government acknowledges its burden of proving specific intent under each count of the indictment;[1] it concedes that it must prove that Adames knew that it was unlawful to export the unregistered firearms. *See id.* On appeal, the United States asserts, as it did in the court below, that Adames' execution of the Export Notice and her conduct throughout this period of time amply supports the inference that she acted willfully.

Having studied the transcription of the testimony elicited at trial, especially those portions to which the government eludes, we conclude that the government failed to prove that Adames acted willfully. The evidence demonstrates, at most, that Adames was negligent in not investigating the legal prerequisites to the exportation of firearms. It does not prove that she intentionally violated a known legal duty not to export the firearms or purposefully perpetuated her ignorance of the AECA to avoid criminal liability. Though it reasonably could be inferred from Adames' suspicious conduct that she was aware of the generally unlawful nature of her actions, that

state of mind is insufficient to sustain a finding of guilt under a statute requiring specific intent. *See United States v. Frade,* 709 F.2d 1387, 1392–93 (11th Cir. 1983); *United States v. Hernandez,* 662 F.2d 289, 292 (5th Cir.1981).

AFFIRMED.

---

1. Specific intent is also an element of the conspiracy charged in Count I of the indictment. To sustain the conspiracy conviction, the evidence amply must show that Adames agreed to export the firearms without the requisite licenses despite knowledge that such exportation was unlawful. *See United States v. Wieschenberg,* 604 F.2d 326, 331 (5th Cir.1979).