UNITED STATES of America, Plaintiff,

v.

**Emilio ORTIZ de ZEVALLOS, Michael Macko, and Frank Van Ameringen, Defendants.**

No. 89–0677–CR.

United States District Court, S.D. Florida.

Oct. 18, 1990.

Paul E. Pelletier, Asst. U.S. Atty., for plaintiff.

Michael H. Tarkoff, Miami, Fla., for defendant Zevallos.

Jay L. Levine, Miami, Fla., for defendant Macko.

Kenneth Swartz, Asst. Public Defender, for defendant Van Ameringen.

## ORDER GRANTING MOTION FOR JUDGMENT OF ACQUITTAL AND DENYING MOTION FOR NEW TRIAL

NESBITT, District Judge.

This cause came before the Court upon the Defendants' motions for judgment of acquittal and new trial pursuant to Federal Rules of Criminal Procedure 29 and 33.[1] The Defendants were charged with violating 1) the Cuban Assets Control Regulations, 31 C.F.R. § 515.201(b)(1), promulgated pursuant to the Trading With the Enemy Act ("TWEA"), 50 U.S.C.App. §§ 5(b) and 16, 2) the Export Administration Act ("EAA") and implementing regulations, 50 U.S.C.App. § 2410(b) and 15 C.F.R. §§ 772.1, 785.1, 787.6 and 799.1, and 3) 18 U.S.C. § 2. In addition, Defendant Michael Macko was charged with making false statements on a Shippers Export Declaration ("SED") in violation of 18 U.S.C. § 1001. The Defendants allegedly shipped to Panama materials for use in manufacturing cigarettes—namely, packaging machinery, printing ink, and poly film—which were then shipped from Panama to Cuba. Defendants first moved for judgment of acquittal at the conclusion of the government's case and the Court reserved ruling. Following the verdict the Court requested written memorandum from the Defendants and the government regarding the motion for judgment of acquittal. Defendants now move for a judgment of acquittal on the grounds that 1) the government failed to show that Defendants had the specific intent necessary to sustain a conviction under either the TWEA or the EAA; 2) the transaction as established by the evidence does not violate the implementing regulations of the TWEA or EAA as charged in the indictment; and 3) the evidence failed to show that Defendant Macko made a false statement as to a material fact on the SED.

## I. LEGAL STANDARD AND EVIDENCE ADDUCED AT TRIAL

A judgment of acquittal will be granted when the evidence adduced at trial fails to prove the defendant's guilt beyond a reasonable doubt. *United States v. Villegas*, 911 F.2d 623 (11th Cir.1990). It is well established, however, that to determine the sufficiency of the evidence supporting the verdict, the court must view the evidence in the light most favorable to the government. *Id.; see also Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Thus, to support the jury's finding, the evidence need not exclude every hypothesis of innocence if a reasonable construction of the facts adduced at trial establishes guilt beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (*en banc*),

---

1. In deciding Defendants' motions, the Court has considered the arguments made by Defendant Emilio Ortiz de Zevallos, which were adopted almost in their entirety by his co-defendants. Mr. Ortiz de Zevallos, however, fled the country shortly before the Court issued its ruling on the motion for judgment of acquittal and is now a fugitive. Therefore, this Order addresses only the motions of the two remaining non-fugitive Defendants. It scarcely need be stated that a defendant is not entitled to a ruling on his motion while a fugitive.

*aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

Even viewed by this standard, however, the paper trail relied on by the government has too many twists and turns and dead ends to establish more than a tenuous inference that the Defendants acted with the requisite intention to violate either the TWEA or the EAA. The government's case against the Defendants is primarily a paper case, made up of letters, faxes, shipping invoices, and other documents by which the government attempts to weave a web of culpability in which all the Defendants are entangled. The documents and testimony introduced at trial, taken in the light most favorable to the government, reflect the following. Sometime in the first half of 1988, Defendant Frank Van Ameringen became part of a plan involving the sale of counterfeit Winston cigarettes manufactured in Cuba. The exact details of the genesis of the plan are not clear. It is clear, however, that by August of 1988, Van Ameringen had contacted Defendant Emilio Ortiz de Zevallos, a Peruvian citizen residing in Chile who conducted business in the Panamanian free zone.[2] The third Defendant, Michael Macko, was apparently the last of the Defendants to enter into the arrangement. Macko was a former engineer with R.J. Reynolds Tobacco Co., and had substantial knowledge about manufacturing cigarettes.

The trio's plan was premised on Macko obtaining items necessary to manufacture the counterfeit Winstons and then selling them to Ortiz de Zevallos. The evidence shows that Macko acquired used packaging machines that could wrap individual packs of cigarettes, place them in cartons, and then overwrap the carton in a poly film. The evidence also shows that Macko purchased poly film, tear tape, and printing inks. Specifically, the printing ink purchased included "Winston Red" and "Winston Gold," two colors specially mixed to match the colors then used on the Winston cigarette packaging.

In October 1989, the overwrap machine purchased by Macko was sent to Panama by Union Standard Equipment Co., the company which sold the overwrap machine to the Defendant. In March 1989, Macko, through his company Machine Systems Inc., sent the other items to Panama. In both instances, Ortiz de Zevallos was the consignee. Ortiz de Zevallos made several trips to the United States, and in March, helped arrange for the export of the items sent to Panama. Moreover, all of the Defendants traveled to Cuba subsequent to the exportation of the equipment from the United States. Macko admitted that he traveled to Cuba at least twice to install the equipment.

Finally, the evidence indicates that Ortiz de Zevallos paid Macko for the equipment. The government introduced into evidence checks from Ortiz de Zevallos payable to either Macko or one of his companies in the amounts of $55,000.00, $42,000.00, $21,-000.00, and $2,218.00. The government also produced some evidence that Macko would have received compensation in the form of shared profits from the cigarettes manufactured in Cuba when they were sold.

## II. VIOLATIONS OF THE TRADING WITH THE ENEMY ACT AND THE EXPORT ADMINISTRATION ACT

Defendants are charged with "trading with the enemy" in violation of 31 C.F.R. § 515.201(b)(1), promulgated pursuant to 50 U.S.C.App. § 5(b). The Code of Federal Regulations, Title 31 § 515.201(b)(1) prohibits, unless otherwise authorized by the Secretary of the Treasury,

(b) ... transactions involv[ing] property in which any foreign country designated under this part, or any national thereof, has at any time on or since the effective date of this section had any interest of any nature whatsoever, direct or indirect: (1) All dealings in, including, without limitation, transfers, withdrawals, or exportations of, any property or evidences of indebtedness or evidences of ownership of property by any person subject to the jurisdiction of the United States....

Section 515.309 of 31 C.F.R. further defines, without limiting, transactions in

---

**2.** The Panamanian "free zone" is so-called because of the tax treatment of items traded there.

which any foreign country has an interest as

(a) Any payment or transfer to such designated foreign country or national thereof, (b) any export or withdrawal from the United States to such designated foreign country, and (c) any transfer of credit, or payment of an obligation, expressed in terms of the currency of such designated foreign country.

The "designated foreign country" referred to in these regulations is Cuba. 31 C.F.R. § 515.201(d). Pursuant to the TWEA, 50 U.S.C.App. § 16, any criminal violation of the regulations requires "willfulness," or specific intent.

Defendants also are charged with knowingly and willfully conspiring to export machinery to Cuba without obtaining a license in violation of the EAA, 50 U.S.C.App. § 2410(b). Pursuant to 15 C.F.R. §§ 772.1, 785.1, 787.6, and 799.1, a license is required for the export and reexport of almost all U.S. commodities to Cuba. Under § 2410(b) violation of the EAA must also be "willful," and at a minimum, the government must prove the same degree of criminal intent required for the substantive offense to support a conspiracy conviction. *United States v. Wieschenberg*, 604 F.2d 326, 331 (5th Cir.1979); *United States v. Davis*, 583 F.2d 190, 192 (5th Cir.1978). Thus, to sustain the conviction under either the TWEA or EAA, the evidence must show that Defendants had the specific intent to violate the regulations prohibiting trade with Cuba except under certain circumstances.

### A. Specific Intent

A finding of specific intent requires evidence that the defendant must "have *actually known* of the ... requirement and have voluntarily and intentionally violated that known legal duty...." *United States v. Warren*, 612 F.2d 887, 890 (5th Cir.1980) (*en banc*) (emphasis added), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). In recent years, the United States Court of Appeals for the Eleventh Circuit has addressed the issue of specific intent in several cases involving foreign trade, thus clearly defining the nature of the evidence necessary to sustain a finding of guilt in the case now before the Court. *See United States v. Markovic*, 911 F.2d 613 (11th Cir.1990) (reversing denial of motion for judgment of acquittal on issue of specific intent under Arms Export Control Act); *United States v. Adames*, 878 F.2d 1374 (11th Cir.1989) (per curiam) (affirming judgment of acquittal on issue of specific intent under Arms Export Control Act); *United States v. Fuentes–Coba*, 738 F.2d 1191 (11th Cir.1984) (affirming denial of motion for judgment of acquittal on issue of specific intent under TWEA), *cert. denied*, 469 U.S. 1213, 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985); *United States v. Frade*, 709 F.2d 1387 (11th Cir.1983) (reversing denial of motion for judgment of acquittal on issue of specific intent under TWEA). Indeed, *United States v. Adames* is squarely and inescapably on point. Although *Adames* involved the violation of the Arms Export Control Act, 22 U.S.C. § 2778, rather than the TWEA or EAA, it is virtually indistinguishable from the instant case on the facts.[3]

In *Adames*, the vice-consul of the Panamanian consulate in Miami, Ivonne Adames, was charged with 1) exporting and attempting to export to Panama firearms on the United States Munitions List without an export license, and 2) conspiring with her brother, Ivan Blasser, to commit

---

**3.** That *Adames* is substantially and significantly analogous to the present case is best illustrated by the government's attempts to distinguish it. During oral argument, counsel for the government stated that *Adames* was factually distinguishable from the case before the Court because, *inter alia,* the defendant was 1) a woman and 2) "doing a favor for a friend." Transcript of proceedings of August 9, 1990 ("Trans.") at 18. Counsel for the government then implied that the Eleventh Circuit had failed to recite all the relevant evidence in the *Adames* opinion, Trans. 20, and inexplicably stated that the Eleventh Circuit "went out of its way" to affirm District Judge Scott. Trans. at 21. (The government clarified its position in its objections to the proposed order filed September 7, 1990, stating that Judge Scott's "reputation and character" played a role in the Eleventh Circuit's decision to affirm in *Adames.*) Finally, counsel for the government simply declared the *Adames* decision, together with the Eleventh Circuit's decision in *United States v. Frade*, 709 F.2d 1387 (11th Cir.1983), a "freak." Trans. at 52. Needless to say, the Court finds none of these arguments persuasive.

both of the above offenses. The jury convicted the defendant on all counts. The district court subsequently granted defendant's motion for judgment of acquittal on the issue of specific intent, and the Court of Appeals affirmed. 878 F.2d at 1375–77.

Taking the evidence in the light most favorable to the government, the Court of Appeals found that the defendant had, on four occasions, exported or attempted to export firearms purchased by her brother to Panama without a license. Notably, her brother was told in at least two instances that certain specified items needed an export license. Moreover, when the defendant picked up the firearms on the third occasion, she initialed a notice which stated,

#### EXPORT NOTICE

Certain products may not be exported from the U.S.A. without specific approval from the Department of Commerce (Part 375, Export Administration) and/or Department of State (Title 22, Parts 121–128, ITAR). It is the BUYER'S responsibility, not the SELLER'S, to obtain such licensing unless agreed to otherwise.

The final time the defendant went to pick up the guns she refused to initial the export notice. Blasser therefore flew to Miami to retrieve the firearms, but also refused to execute the notice. An inexperienced sales clerk nevertheless released the weapons without Blasser's signature. The guns were then seized by the U.S. Customs Service prior to the departure of the flight to Panama. The next day, the defendant issued a consular letter, backdated, which purportedly authorized the purchase of the firearms seized by Customs. 878 F.2d at 1376.

The Eleventh Circuit concluded that the government had failed to prove that the defendant had intentionally violated a

"known legal duty" or "purposefully perpetuated her ignorance" of the law to avoid criminal liability. *Id.* at 1377. The court found that "[t]he evidence demonstrates, at most, that Adames was negligent in not investigating the legal prerequisites to the exportation of firearms." *Id.* The court also held that

> [t]hough it reasonably could be inferred from Adames' suspicious conduct that she was aware of the generally unlawful nature of her actions, that state of mind is insufficient to sustain a finding of guilt under a statute requiring specific intent.

*Id.* (citing *United States v. Frade,* 709 F.2d 1387, 1392–93 (11th Cir.1983); *United States v. Hernandez,* 662 F.2d 289, 292 (5th Cir.1981)).[4]

■ In the present case the government contends the jury could infer that the Defendants had actual knowledge of the regulations prohibiting the export of goods to Cuba by way of Panama from the following acts either done by or attributable to each Defendant: 1) sending passport numbers secretly to Cuba; 2) never traveling directly to Cuba; 3) stating that Panama was the ultimate destination of the equipment; 4) concealing the destination of the goods from others; 5) charging an exorbitant price for the machinery; 6) communicating disagreement with certain U.S. laws to Cuban officials; 7) misstating their intentions to Customs officials; and 8) falsely recounting details of the charged shipments to Customs agents at the time of the arrest. As the strongest evidence of the Defendants' actual knowledge of the regulations, the government relies on the Defendants' education and experience as international businessmen, and Macko's and Van Ameringen's possession of a booklet issued by the U.S. Customs Service, entitled "Importing into the United States."[5]

---

**4.** In *Adames,* the government contended that defendant made false exculpatory statements to customs agents, which were further evidence of her guilt. Although the trial court rejected the government's characterization of these statements, *United States v. Adames,* 683 F.Supp. 255, 258 (S.D.Fla.1988), it appears, in light of the above statement, that the Court of Appeals accepted the government's contention.

**5.** Defendants correctly assert that since the Court reserved ruling on the motion for judgment of acquittal, the Court can consider only the evidence presented in the government's case-in-chief, *United States v. Rhodes,* 631 F.2d 43 (5th Cir.1980), and therefore, Defendant Macko's testimony concerning his experience exporting goods and his understanding of the export laws should be disregarded. The Court finds, however, that even taking into account

Much of the evidence the government relies on is susceptible to more than one interpretation, and all of it is circumstantial.[6] The Court recognizes, however, that specific intent can be proved by circumstantial evidence. *See United States v. Gregg,* 829 F.2d 1430, 1436 (8th Cir.1987) (evidence that defendant had expertise in area of Arms Export Control Act, *i.e.,* that "he gave lectures and published newsletters on the subject," is circumstantial evidence of actual knowledge of the regulations), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988). Moreover, the Court recognizes that a jury could reasonably infer from the facts that Defendants behaved suspiciously, by misstating their intentions to Customs at the time of the arrest and other similar acts, because they believed their conduct to be unlawful. To infer from the evidence of Defendants' suspicious conduct that Defendants had actual knowledge of the regulations promulgated pursuant to the TWEA and EAA would be mere speculation, however. Mere conjecture or speculation cannot sustain a determination of guilt. *See Villegas,* 911 F.2d at 628. The evidence reasonably suggests only that Defendants were aware of the "generally unlawful nature" of their actions, and such general knowledge does not amount to specific intent. As plainly stated in *Adames,* although the defendant may be "aware of the generally unlawful nature of [his] actions, that state of mind is insufficient to sustain a finding of guilt under a statute requiring specific intent." 878 F.2d at 1376.

■ Contrary to the government's suggestion, *Adames* is not an anomalous case. In *Frade,* the Eleventh Circuit reversed convictions pursuant to the TWEA on the issue of specific intent, stating that "[t]he finding that a defendant is aware that his conduct is generally unlawful is insufficient to sustain a finding of guilt under a statute requiring specific intent." 709 F.2d

at 1392. The *Frade* defendants had been convicted of violating the TWEA under recently promulgated regulations by rescuing Cubans in the Mariel boatlift. The court found that the defendants lacked the specific intent to violate 31 C.F.R. § 515.415(a), because although the government had warned the defendants that their conduct would be illegal, the defendants were never specifically advised that regulation 31 C.F.R. § 515.415(a) prohibited their actions. 709 F.2d at 1393. In another case, *United States v. Hernandez,* 662 F.2d 289 (5th Cir.1981), the court also reversed two convictions for lack of sufficient evidence of specific intent. The court found that the defendant's understanding that his conduct was unlawful was not the equivalent of knowing that "he was unlawfully exporting weapons on the Munitions List." 662 F.2d at 292. Thus, the evidence of Defendants' suspicious or devious conduct cannot provide the basis for a finding of specific intent.

■ In addition, none of the evidence regarding Defendants' education or experience in international trade, including their possession of import regulations, provides adequate grounds for a finding beyond a reasonable doubt that Defendants had actual knowledge of the regulations. No evidence was introduced to show that Defendants were actually exposed to or learned of the relevant regulations as part of their education or in the course of their business affairs. Moreover, actual knowledge of the regulations referred to in a U.S. Customs publication, "Importing into the United States," cannot be imputed to the Defendants merely because the booklet was in their possession. Even if the physical possession of certain information could be equated with actual knowledge of the same, the booklet nowhere states what types of *export* transactions violate the Cuban embargo or require an export li-

---

Macko's testimony, the evidence is insufficient to support a finding of actual knowledge of the regulations.

6. A plausible interpretation of much of the evidence cited by the government, such as the fact that Defendants never traveled directly to Cuba and listed the destination of the goods as Pan-

ama, is that Defendants thought that it was illegal to deal directly with Cuba. That Defendants thought it was illegal to deal directly with Cuba, however, does not advance the government's argument that Defendants believed it illegal to export goods bound for Cuba to Panama.

cense. The full text of the information provided concerning the Cuban embargo is as follows:

> The Foreign Assets Control Regulations (31 C.F.R., part 500) prohibit unlicensed importations of merchandise of Iranian, North Korean, Cambodian (Kampuchea), Vietnamese, Nicaraguan, or Libyan origin, including articles grown, produced, or manufactured therein. The unlicensed importations of goods of Cuban origin, articles containing Cuban components, and all goods imported from or through Cuba are prohibited.

> Specific inquiries should be made to Foreign Assets Control, Department of the Treasury, Washington, D.C. 20220, or to the Foreign Assets Control Division, Federal Reserve Bank of New York, New York 10045.

Exhibit 70 at 56.

The above statement simply does not put the reader on notice of what constitutes a violation of 31 C.F.R. § 515.201 or the EAA regulations.

■ The government argues that even if the evidence fails to support a finding that Defendants actually knew of the prohibitory regulations, it would support a finding of "deliberate ignorance" of the law.[7] There is no well-established rule concerning the application of the doctrine of deliberate ignorance to specific intent crimes. This Court, however, believes that the doctrine of deliberate ignorance clearly should apply to specific as well as general intent, and Defendants have not raised any policy considerations or cited any case law to the contrary. *See also Adames,* 878 F.2d at 1377 (suggesting that the defendant could have been convicted if she "purposefully perpetuated her ignorance" of the law).

■ Assuming that the law of deliberate ignorance should be considered in a specific intent analysis, this Court finds that the evidence adduced at trial, viewed in the light most favorable to the government, cannot sustain a finding that the Defendants were "deliberately ignorant" of the regulations. A comparison of this case with *Adames* is again illustrative. According to the government, the Defendants in this case should have been aware that the transaction would violate the Cuban embargo, because Defendants are well-educated individuals with some exporting experience. Defendants, however, are no more sophisticated than the defendant in *Adames,* who was vice-consul of the Panamanian consulate in Miami and who presumably should have known that it was illegal to ship weapons to Panama without a license.

Moreover, unlike *Adames,* in which the defendant personally initialed a notice specifically informing her that the export of certain items required a license and that she was responsible for obtaining the license, in the case before the Court, there is no evidence that Defendants were ever told that their conduct might be illegal. Finally, Defendants Van Ameringen and Macko were exporting seemingly innocuous supplies, such as old packaging machinery and ink. Yet, even in *Adames,* where the de-

---

**7.** The government never requested a deliberate ignorance instruction at trial. Now, as support for its current position that the evidence would support a finding of specific intent because the Defendants consciously avoided the requirements of the law, the government relies on three cases involving money laundering. *See United States v. Rigdon,* 874 F.2d 774 (11th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 374, 107 L.Ed.2d 360 (1989); *U.S. v. Hernando Ospina,* 798 F.2d 1570 (11th Cir.1986); *United States v. Bank of New England, N.A.,* 821 F.2d 844 (1st Cir.1987), *cert. denied,* 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987). Unfortunately, these cases bear no factual resemblance to the instant case and provide little insight into the application of the law of deliberate avoidance to the requirement of specific intent: in each case, there was direct evidence of actual knowledge of the regulation. In *Rigdon,* an agent testified that he had discussed with the defendant in detail the reporting requirements. 874 F.2d at 778 n. 5. In *Hernando Ospina,* there was also direct evidence, stemming from conversations with agents, of defendants' awareness of the reporting requirements. 798 F.2d at 1580–81. In *Bank of New England,* a bank teller testified that she knew that the transactions at issue were reportable and that the source of her knowledge was the head teller; further, the teller testified that the head teller "deliberately chose not to file a CTR ... because he was a 'good customer.'" 821 F.2d at 857. Since the knowledge of employees acting in the scope of employment is imputed to the defendant bank, *id.* at 855, this evidence was more than sufficient to find that the banks' conduct amounted to a willful violation of the statute. *Id.* at 857.

fendant exported weapons, items which are more often the subject of criminal statutes and governmental regulation, the court refused to find that the defendant "purposefully perpetuated her ignorance" of the law. 878 F.2d at 1377.

Thus, under the standard set forth in *Adames*, the government has failed to present evidence establishing that the Defendants were "deliberately ignorant" of the law. At best, the evidence suggests that the Defendants were "negligent in not investigating the legal prerequisites to the exportation [of the packaging machinery, ink and poly film]." 878 F.2d at 1377. And negligence, "even gross negligence, does not satisfy the willfulness requirement." *United States v. Lizarraga–Lizarraga*, 541 F.2d 826, 828 (9th Cir.1976).

The government suggests that granting a judgment of acquittal in this case will force it to apprehend defendants actually reading the relevant regulations to prevail in proving specific intent crimes. Many cases interpreting statutes and regulations which require specific knowledge in order to sustain a conviction suggest that the government's characterization of its burden, although exaggerated, is not entirely unreasonable. *See United States v. Schnaiderman*, 568 F.2d 1208, 1211 (5th Cir.1978) (need to notify travelers either in writing or orally of specific reporting requirements; "[a]n acknowledged awareness of 'U.S. currency laws' is too vague and unspecific to satisfy" specific intent requirement"); *see also United States v. Warren, supra; United States v. Granda*, 565 F.2d 922 (5th Cir.1978).[8] In addition, the government ignores other cases which illustrate the types of evidence that would be sufficient to sustain a finding of specific intent.

In *United States v. Mowad*, 641 F.2d 1067, 1073 (2d Cir.1981), *cert. denied*, 454 U.S. 817, 102 S.Ct. 94, 70 L.Ed.2d 86 (1981), the court upheld a conviction for conspiracy to export firearms because, *inter alia*, the tape recordings of the defendant's conversations with agents indicated that he had the necessary intent. In *United States v. Gregg*, 829 F.2d 1430 (8th Cir.1987), the Eighth Circuit upheld a conviction under the Arms Export Control Act based upon circumstantial evidence regarding the defendant's expertise in the field. The evidence showed that the defendant published newsletters and gave lectures concerning the Act. 829 F.2d at 1436. The Court further notes that in the only case in which the Court of Appeals for the Eleventh Circuit has upheld a conviction under the TWEA, evidence existed that the participants in the conspiracy discussed the necessity of obtaining a license to export goods to Cuba. *Fuentes–Coba*, 738 F.2d at 1194. There was also direct evidence of specific intent: the defendant testified that he was aware of the licensing requirement. *Id.* Thus, the Court finds unpersuasive the government's argument that this Court is creating an impossibly high standard the government must meet, rather than merely applying the ordinary standard necessary for a finding of specific intent.

█ Adherence to such a standard is not as unreasonable as the government would suggest. Where administrative regulations proscribe conduct not ordinarily classified as *malum in se*, "no useful end is served by prosecuting the 'violators' when they have no knowledge of the law's provisions." *Frade*, 709 F.2d at 1392. The government has stated repeatedly that Defendants' violation of the Cuban Asset Control Regulations is different from other regulatory violations, because the Cuban Asset Control Regulations have been in effect for almost thirty years and the existence of the Cuban embargo is widely known. The length of time the embargo has been in effect, however, does not permit this Court to rewrite § 16 of the TWEA

---

**8.** In *Granda*, Judge Fay stated that "[t]he failure of the government to make known the requirements of the statute is fatal to their case." 565 F.2d at 926. The court further stated that "[p]roof of the requisite knowledge and willfulness is almost impossible unless affirmative steps are taken by the government to make the laws' requirements known." *Id.* The court, however, suggested a simple solution to the problem posed by willfulness requirement—add a sentence to the Customs Declaration which would place all travellers on notice of the law. *Id.*

or § 2410(b) of the EAA and treat a violation of the regulations as a *malum in se* crime requiring a lesser awareness of the relevant regulations. The Court believes Judge Scott's apt observation concerning the Arms Control Export Act bears reiteration at this juncture:

> [F]or the purposes of future prosecution it may be helpful for the United States Government to promulgate appropriate notices ..., or alternatively have the Congress of the United States readdress the question of whether the requirement of willfulness should be eliminated for future offenses. These matters are better left to these Governmental entities and not this Court. Here, we have simply applied the law as we find it.

*United States v. Adames,* 683 F.Supp. 255, 258 (S.D.Fla.1988).

### B. Conduct Constituting a Violation Of the Regulations

Defendants have argued throughout the proceedings that the transaction as established by the government fails to violate the TWEA and EAA as charged in the indictment. The government has failed to respond to this argument except to highlight Defendants' lack of authority supporting their position. The government, however, also fails to cite any authority for its position, and the Court's independent inquiry has not uncovered any relevant case law. Thus, the question of whether shipping goods bound for Cuba to Panama violates 31 C.F.R. § 515.201(b)(1) or 15 C.F.R. §§ 772.1, 785.1, 787.6 and 799.1 appears to be one of first impression.

#### 1. *Title 31, C.F.R. § 515.201(b)(1)*

Title 31, § 515.201(b)(1), as set forth *supra,* clearly prohibits exporting goods to Cuba or to Cuban nationals. Subsection (c) of the same section, 31 C.F.R. § 515.201(c) prohibits "[a]ny transaction for the purpose or which has the effect of avoiding any of the prohibitions set forth in paragraph ...

(b) of this section." Defendants have been charged with violating only § 515.201(b)(1), not § 515.201(c). The government concedes that the Defendants could have been charged under § 515.201(c), but argues that they also have violated § 515.201(b)(1).

For the reasons stated below, the Court finds that the transaction, viewed in the light most favorable to the government, violates § 515.201(c). The Court also finds that subsections (b)(1) and (c) define two separate and distinct violations of the TWEA, and therefore, the transaction fails to violate both subsections of the regulation.[9]

■ Defendants initially argued that the transaction did not violate the Cuban Assets Control Regulations because the sale of goods by a United States citizen or corporation to a wholly independent Peruvian citizen conducting business in Panama does not violate the TWEA—even if the U.S. entity is aware of the buyer's intention to sell the goods to Cuba. The Court agrees. It is difficult to see how mere knowledge of the possibility of the subsequent transaction transforms the legitimate sale of goods between a U.S. citizen and a citizen of Peru into a violation of the embargo against Cuba, provided that the parties are truly independent and the seller does not benefit from the subsequent sale to Cuba. Nothing in the Cuban Assets Control Regulations suggests that such a transaction could violate the law.

The scenario described by defense counsel, however, differs from the one described by the government, and the Court must draw all reasonable inferences from the evidence in favor of the government. Viewed from the government's perspective, the evidence suggests that Defendants were not involved in an arms' length transaction between a U.S. citizen and a wholly independent citizen of Peru. Rather the evidence indicates that Defendants Macko

---

9. Although the Court finds that the transaction at issue would be prohibited by 31 C.F.R. § 515.201(c), rather than 31 C.F.R. § 515.201(b)(1), the Defendants' motion for judgment of acquittal would have been granted even if the government had charged the Defendants under subsection (c). In accordance with the analysis in the prior section, the government would have had to prove that Defendants had the specific intent necessary to violate subsection (c). The evidence fails to indicate that Defendants had actual knowledge that the regulations prohibited transactions designed to circumvent the Cuban embargo.

and Van Ameringen not only knew that Ortiz de Zevallos would ship the packaging machinery to Cuba but also intended that the machinery go to Cuba. Van Ameringen and Macko hoped to benefit from the trade with Cuba by reaping a share of the profits from Cuban cigarettes packaged by the machines they exported.

■ Whether this transaction would violate the prohibition contained in § 515.201(b)(1) against exportations of property of Cuban interest by any person subject to the jurisdiction of the United States is not immediately apparent from the language of the regulations; Van Ameringen and Macko plainly did *not* trade with Cuba, Cuban nationals, or Cuban agents. This Court, however, need not struggle to determine the scope of the language contained in subsection (b), because subsection (c) clearly prohibits any transactions designed to circumvent subsection (b). Defendants intended that the materials exported to Panama reach Cuba. Such a transaction is unmistakably designed to "avoid the prohibition" against trading with Cuba, and therefore, it violates 31 C.F.R. § 515.201(c).

Elementary principles of statutory construction dictate that (b)(1) and (c) should be read to prohibit different types of transactions. In construing statutes the court should give effect to each word, clause, and sentence. The construction should render no part "inoperative or superfluous, void or insignificant." *Norfolk & W.R. Co. v. United States,* 768 F.2d 373, 379 (D.C.Cir. 1985) (citations omitted), *cert. denied,* 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986). Stated another way, "[i]t is an elementary rule of statutory construction that if a 'statute admits a reasonable construction which gives effect to all of its provisions' a court 'will not adopt a strained reading which renders one part a mere redundancy.'" *Meltzer v. Board of Public Instruction,* 548 F.2d 559, 578 n. 38 (5th Cir.1977) (citations omitted), *on rehearing,* 577 F.2d 311 (5th Cir.1978), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979).

■ The government has offered no interpretation of the regulations that gives each subsection of the regulation a distinct meaning. The plain language of subsection (c) of § 515.201 appears to apply to the transaction at issue. To interpret 31 C.F.R. § 515.201(b)(1) to include such transactions which have the purpose or effect of avoiding the prohibition against trading with Cuba would be to render 31 C.F.R. § 515.201(c) a "mere redundancy." Thus, the Court finds that Defendants' actions do not violate 31 C.F.R. § 515.201(b)(1) as charged in the indictment.

*2. Title 15, C.F.R. § 785.1*

Defendants are also charged with conspiring to export goods to Cuba without a valid export license in violation of the EAA. Title 15, C.F.R. § 785.1 provides that "a validated license is required for foreign policy purposes for the export and reexport of virtually all U.S.–origin commodities and technical data to destinations in [Cuba]." Thus, whether Defendants needed a license to export the equipment to Panama turns on whether the goods were "reexported" to Cuba. Unfortunately, "reexported" is not a common usage in the English language. Nor is it defined in the dictionary. The regulations provide only a circular definition of reexport: reexport is defined to "include reexport, transshipment, or diversion of commodities or technical data from one foreign destination to another." 15 C.F.R. § 770.2.

It is not essential, however, that this Court develop a suitable definition of "reexport." The Court already has determined that the Defendants lacked the specific intent necessary to establish a willful violation of the EAA. In light of the potential constitutional problems associated with delineating criminal conduct in undefined terms as vague as "reexport," the Court leaves for another day the question of whether under 15 C.F.R. § 785.1 Defendants were required to obtain an export license to ship the equipment to Panama. *See generally Church of Scientology F.S.O. v. City of Clearwater,* 777 F.2d 598, 604 (11th Cir.1985) (court "ought not pass on questions of constitutionality ... unless such adjudication is unavoidable.") (citations omitted), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986).

## III. FALSE STATEMENTS ON THE SHIPPERS EXPORT DECLARATION

■ In the indictment, Defendant Macko is charged with making a false statement as to a material fact on the SED in violation of 18 U.S.C. § 1001, because the country of ultimate destination was listed as Panama rather than Cuba. The statute, 18 U.S.C. § 1001, provides that

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Defendant contends that the evidence fails to support the conviction under 18 U.S.C. § 1001.

The evidence clearly establishes that the Defendant gave the freight forwarder, American Overseas Transport Corporation, power of attorney to complete the necessary documentation to ship the machinery and other items to Panama. Ms. Nancy York, an employee of American Overseas Transport Corporation, filled out the SED. Ms. York testified that she was given written instructions that the goods were to be shipped to Panama, *in transito*, or Panama, in transit. She assumed that the freight would be shipped to Uruguay from Panama, although neither Macko nor Ortiz de Zevallos ever suggested that the goods were going to Uruguay. Ms. York also testified that she never directly asked whether the shipment was going to Panama or Uruguay.

Ms. York's testimony is unequivocal in at least one respect. Macko and Ortiz de Zevallos told Ms. York that the shipment was going to Panama, "in transit." Ms. York believed that "in transit" meant the cargo would be shipped to another country from Panama, and she also knew that the SED required information regarding the "ultimate destination" of the shipment. She nevertheless failed to obtain further information from Macko and Ortiz de Zevallos, and listed the ultimate destination as Panama. Macko and Ortiz de Zevallos never saw the completed SED. Thus, it is clear that they, at most, failed to reveal the entire truth concerning the destination of the shipment to Ms. York, but did not make any false statements to her. Therefore, the conviction on Count V must also be overturned.[10]

## IV. MOTION FOR A NEW TRIAL

In accordance with Federal Rule of Criminal Procedure 29(d), having granted a judgment of acquittal, the Court has duly considered and determined whether a new trial should be granted if the judgment of acquittal is vacated or reversed.

The numerous grounds raised by the Defendants' motions for new trial were raised prior to and during the trial proceedings. At that time the objections were fully presented by counsel for the Defendants. The Court orally ruled on each ground by reciting specific findings and reasons at appropriate stages of the trial proceedings. There have been no new or additional grounds presented by the motions for new trial which warrant any different rulings or which would now warrant relief by way of a new trial.

### Conclusion

Accordingly, for the reasons stated above, it is hereby

---

**10.** The Court need not decide whether Ms. York's testimony would be sufficient to uphold a conviction under 18 U.S.C. § 1001 on the grounds that Defendant "conceal[ed] or covered] up by any trick, scheme, or device a material fact" on the SED because the government only charged Defendants with making a false statement on the SED.

ORDERED AND ADJUDGED that the motion for judgment of acquittal is GRANTED as to Defendant Michael Macko and Frank Van Ameringen on all counts. Further, it is

ORDERED and ADJUDGED that the Defendants' motion for new trial is DENIED.

DONE AND ORDERED.